## RODEN ET ALS. vs. JACO.

1. J. by deed conveyed certain lands to a trustee to indemnify his securities on a debt due to the Bank, and subsequently availed himself of the benefit of the bankrupt act. Pending the application and before his final discharge in bankruptcy, R., having recovered a judgment and sued out execution against him, paid the debt due to the Bank, and procured a sale of the lands under and pursuant to the deed of trust, at which sale she became the purchaser. *Held*—

   1st. That the execution, issued on the judgment in favor of R., was voidable merely, and was sufficient until avoided to entitle her under the statute (Clay's Dig. 256, § 6,) to discharge the debt secured by the deed of trust, and have the lands sold under it for her use and benefit.

   2d. That such sale vested in the purchaser both the legal and equitable title to the lands.

Error to the Circuit Court of Marshall. Tried before the Hon. Geo. Goldthwaite.

THIS was an action of trespass to try title to certain parcels of land in Marshall county, and was instituted by the defendant against the plaintiffs in error, who are the heirs at law of Margaret Roden, dec'd. By a bill of exceptions found in the record, it appears that the plaintiff below introduced in evidence patents from the United States to him for the lands in controversy, dated in 1833, and a deed for the same from Septimus B. Cabiness, the Assignee in Bankruptcy for the Northern District of Alabama, bearing date the 11th March 1844—also a transcript from the District Court of the United States for said District, showing that he filed his petition in bankruptcy on the 19th April 1842, was declared a bankrupt in November of that year, and obtained a certificate of final discharge in May 1843. The defendants read in evidence a deed of trust with power of sale, from said plaintiff to Josiah Tidwell, executed on the 18th day of January 1842, by which he conveyed said lands to the said Tidwell in trust to indemnify and protect John Baker and David Ricketts, as his securities on a note, for the sum of five hundred and fifty-five dollars, due to the Branch Bank of the State of Alabama at Huntsville, and payable on the 24th of April 1842. They also introduced in evidence the record of a judgment and an execution issued thereon, in favor of their

mother, Margaret Roden, against the plaintiff, which was rendered on the 22d August 1842, in a suit commenced prior to the filing of the petition in bankruptcy; proved the payment by her, on the 1st November 1842, to the said bank of one hundred and eighty dollars, the balance then due on said note, the sale of the lands on the 24th January 1843, under said trust deed by the trustee, at her instance and request, after due notice thereof, to pay the said sum of one hundred and eighty dollars, and her purchase at said sale; and read in evidence after the proof of its execution, a deed from said Tidwell for said lands, in pursuance of said sale, and purchase. They further gave in evidence a transcript of the schedule filed by the plaintiff with his petition in bankruptcy, from which it appeared that he had not rendered in said lands as his property. The court charged the jury in substance that an execution issued on a judgment, which was rendered against the plaintiff pending his application for the benefit of the bankrupt act, was not sufficient to authorise the said Margaret Roden to pay off the balance due on the note, secured by the deed of trust, and have the lands sold for her benefit under said deed. To this charge the defendants excepted and now assign it as error.

ROBINSON and C. C. CLAY, Jr., for the plaintiffs in error:
1. The lien created by the mortgage was not avoided by the discharge of the mortgagor (defendant in error) in bankruptcy. Stewart v. Anderson et al. 10 Ala. 504. Hence it is manifest that if the mortgagee had sold at the instance of the *creditors* secured in the deed, the purchaser would have obtained a title which the bankrupt mortgagor or his assignee could not defeat.
2. The judgment obtained by Margaret Roden against defendant in error, after the latter had filed his petition in bankruptcy, was not *void*, but only *voidable.*—Cogburn & Powell v. Spence & Elliott, 15 Ala. 549. Hence the judgment not being set aside and the execution issuing thereon not being superseded, Margaret Roden on paying the debt secured by the deed, was entitled to all the rights of the creditors secured by the deed. If so, the title she acquired from the trustee was good against the bankrupt or his assignee.—Clay's Dig. 256, § 6. The charge of the court was predicated on the errone-

23

ous opinion that the judgment was void, and therefore we were not entitled to the rights of creditors under the trust deed.

3. The proof showed that defendant in error did not in his schedule prefer any title, legal or equitable, to the land sued for. He thereby disclaimed any right to or interest in the land and is estopped to assert a claim in fraud of ours which he recognised and admitted.

BRICKELL, for the defendant:

1. The decree in bankruptcy relates to the filing of the petition.—Kittredge v. Warren, 7 Law Rep. 82.

2. All the rights and property of a bankrupt at the time of filing his petition vest in the assignee by relation; no lien in favor of creditors can therefore afterwards attach, either by act of the bankrupt or by judgment.—United States Dig. (1847) 87, § 111.

3. The policy of the bankrupt law is to make an equal division of all the bankrupt's effects between his creditors. No "*race of diligence*" between his creditors will be tolerated.— *Ex parte*, Foster, 2 Story's Rep. 158; Everett v. Stone, 3 Story's Rep. 454.

4. The rendition of judgment, issuance of execution and payment of the debt secured by the deed was an attempt on Mrs. Roden's part to secure a preference over the other creditors of the bankrupt, in violation of the spirit and policy of the bankrupt law, and is fraudulent.—(See the cases cited from Story's Rep.)

5. The decisions cited assert that a judgment obtained after the bankruptcy and before the final discharge, is a fraud on the bankrupt law if the plaintiff has notice of the bankruptcy. The law required notice to be given the creditors of the proceedings in bankruptcy, and the court must presume that the requisitions of the law were complied with. The proceedings in bankruptcy are constructive notice to all grantees of property from the bankrupt.—Morse v. Godfrey, 3 Story's Rep. 364.

6. A creditor's bill will not lie to subject property in the possession of a bankrupt acquired before the bankruptcy, because it vests in the assignee.—U. S. Digest, (1848,) § 36-45; see, also, 5 Law Rep. 19, 55, 216, 219.

7. In ejectment by the mortgagor the defendant may prove by parol that the mortgage debt has been paid, and it is a good

Roden et als. v. Jaco.

defence to the action.—Jackson v. Stackhouse, 1 Cow. 122; Runyan v. Mersereau, 11 Johns. 7.

8. If the mortgage debt is paid no release is necessary to reconvey the title to the mortgagor.—Jackson v. Davis, 18 Johns. 7.

9. Money voluntarily paid by one person for the use of another does not create a liability, unless there is a previous request or a subsequent promise.—Kenan v. Hollaway, 16 Ala. 53. This case bears a striking analogy to the payment of an execution by a third person without a previous request. If the defendant avails himself of the payment he ratifies the act and becomes liable.—Rountree v. Hollaway, 13 Ala. 357. So here we insist that the deed was extinguished by Mrs. Roden's unauthorised payment; that the assignee in bankruptcy was thereby invested with a legal title, and that Mrs. Roden's remedy is by bill in chancery, to be subrogated to the rights of the beneficiaries in the trust deed, or by an action of assumpsit against the defendant, if he avails himself of her payment.

PARSONS, J.—In Cogburn & Powell v. Spence & Elliott, 15 Ala. 549, it was the opinion of this court that an execution issued from a judgment which was rendered against a bankrupt before he obtained his final discharge, was not void, but voidable only at the instance of the bankrupt; and that such an execution was a protection to the party at whose instance it was issued, until avoided. In that case the judgment was rendered before the commencement of proceedings in bankruptcy; in this after, but before the final discharge. We think this difference cannot be material in a question between the creditor and the bankrupt. It was held at this term, in Ewing v. Peck & Clark, that a bankrupt could by a proper proceeding avoid an execution issued from a judgment by default against him, which was rendered pending the proceedings in bankruptcy. In this case Mrs. Roden brought her suit against Jaco before he filed his petition in bankruptcy and recovered her judgment, as has been said already, before his final discharge. It does not appear that he made any defence, or that she proved her debt in the bankrupt proceedings, or that she was an actual party to them. A transcript of those proceedings is not made part of the bill of exceptions and cannot therefore be looked to. To deny that a bankrupt may suffer a judgment to go against him either pend-

ing his proceedings in bankruptcy or afterwards, because the debt sued for was contracted before he filed his petition, is to deny his right to waive the defence of bankruptcy. The bankrupt act, it is true, authorises the assignee in bankruptcy to defend suits against the bankrupt, and there might be suits of a character to affect his rights as assignee. Whether the act by construction is to be restrained to such suits or extends to all is not material, for in this case it does not appear that the assignee did defend; or if we were to presume that he did, we must presume that his defence was not good, because it did not prevail. Then the judgment and execution to operate against the bankrupt alone, and to bind his subsequently acquired property, were not void. It is a very different question when they are brought to bear upon the assignee, or to disturb his right to the estate which passed to him as such. The judgment or execution could create no lien upon the estate which had vested in the assignee before the judgment was rendered any more than a judgment and execution in ordinary cases can bind property which the defendant had sold and conveyed before the judgment was recovered. This view was certainly not within the contemplation of Judge Story when he prepared his opinions in the cases to which we have been refered.—See *ex parte* Foster, 2 Story's R. 158; Everett v. Stone, 3 Story's R. 454. Those cases, however, were *very different in their circumstances* from this and we are not sure therefore that our opinion is necessarily inconsistent with his. We only hold that a judgment and execution recovered against a bankrupt pending his proceedings in bankruptcy are not void as against the bankrupt himself or his subsequently acquired property. It appears by the cases cited that the title of the assignee in bankruptcy to the estate of the bankrupt relates back to the time of filing the petition. This only proves that the judgment and execution had after the petition was filed created no lien on the land, but it does not prove, as we think, that they were void as against the bankrupt himself, or that they could not operate as a lien upon his subsequently acquired property until avoided by him. He might never think fit to do this, or he might never be able to do it. We may safely admit that there was constructive notice of the bankrupt proceedings to all concerned, but we cannot see that this alters the question. The bankrupt may nevertheless waive

his plea or defence of the bankruptcy when sued for one of his old debts.   It appears by the bill of exceptions that Mr. Jaco did not surrender his equitable interest in the lands for which he brought his action.   His schedule in the bankrupt proceedings made no mention of those lands.   He, however, introduced a deed from the assignee in bankruptcy for the same lands to himself, bearing date the 11th day of March 1844. Besides this, it appeared on the trial that the lands belonged theretofore to Jaco—that before he filed his petition in bankruptcy he conveyed them by his deed of trust to Tidwell as trustee, to secure Baker and Ricketts as his securities in a note payable to the Branch Bank at Huntsville, and that the trustee pursuant to a power contained in the deed of trust, sold and conveyed them to Margaret Roden, and that the defendants below were her heirs at law and in possession of the land; and it appeared that this sale and conveyance were before the sale and conveyance from the assignee in bankruptcy to Jaco, and it does not appear by the bill of exceptions that the assignee had ever redeemed or offered to redeem the lands under any order or direction of the court in bankruptcy, according to the 11th section of the act or otherwise, or that he had instituted any proceedings to recover them, or to question the deed of trust in any way.   It results from this that Margaret Roden acquired the legal title and that the sale by the assignee afterwards to Jaco at most conveyed only the equitable title.   Upon this he could not recover in an action at law against one having the legal title.   We say that the assignee's deed conveyed to Jaco at most only the equitable title, that is, the right to redeem the lands from the deed of trust, as they had never been redeemed. It remains to be seen whether Jaco got even that right.   As has been said, the lands were sold and conveyed to Margaret Roden by the trustee in the deed before they were sold or conveyed by the assignee in bankruptcy to Jaco, the bankrupt and former owner of the land.   The statute authorised Margaret Roden to pay the debt to the bank and to take the place of the persons for whose benefit the deed was made, because she had an execution against the maker of the deed, Jaco, and the trustee was bound to execute the deed upon her request.—Clay's Dig. 256, § 6.   And it is perfectly obvious that it was not necessary under the statute that there should be any property up-

on which the execution created a lien, in order to entitle the plaintiff in execution to discharge the debt secured by the deed of trust and to take the place of the persons secured. Hence Mrs. Roden as plaintiff in an execution against Jaco, which was good against him until he avoided it and which might bind his after acquired property, was entitled to discharge the debt and to take the place of the persons secured. The rights created by the deed of trust, instead of being taken away, were expressly saved by the bankrupt act. And as there was nothing in the bankrupt act to suspend or take away the rights secured by the deed of trust, which was prior to the petition in bankruptcy, the sale under it by the trustee conveyed to the purchaser a perfect legal and equitable title to the land. If there had been a surplus arising from the sale above what was necessary to pay the residue of the debt to the Branch Bank at Huntsville, we do not say how that should have been disposed of, or whether it belonged to the assignee in bankruptcy or to Mrs. Roden towards satisfaction of her execution against the bankrupt. There was no such surplus. We have considered this case in view of the question, although not made by the counsel, whether this court must regard the bankrupt court as having acquired jurisdiction and possession of the case between the assignee in bankruptcy and the persons secured by the deed of trust, or the branch bank, or the trustee in the deed. If it be admitted that this was so, as to which we express no opinion, still there was a sale by the trustee and that sale never was set aside by the bankrupt court. Hence we do not take it as an absolutely void sale.—Murray v. Ballou, 1 Johns. Ch. R. 566. A *lis pendens* is notice, but a sale is not necessarily void in all instances though it may be set aside.

The charge of the Circuit Court was, in our opinion, erroneous. The judgment is therefore reversed and the cause remanded.